# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**NEUROCARE INSTITUTE OF**
**CENTRAL FLORIDA, P.A.,**

   **Plaintiff,**

**v.**              **Case No:   6:13-cv-1233-Orl-31DAB**

**US CAPITAL ACCESS, INC. and ABE**
**NAZARI,**

   **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

   This cause came on for consideration without oral argument on the following motion filed

herein:

| |
|---|
| **MOTION:**  **Motion for Default Judgment (Doc. 25)** |
| **FILED:**  **March 13, 2014** |
| _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED without prejudice in part**. |

   Plaintiff Neurocare Institute of Central Florida, P.A., filed suit against Defendants US

Capital Access, Inc. and Abe Nazari for claims arising out of an unsolicited facsimile

advertisement[1]. Neurocare now seeks a final default judgment against Defendants.  Because the

Court finds Defendants have violated the Telephone Consumer Protection Act, it is respectfully

**RECOMMENDED** that final default judgment be **GRANTED in par**t as to the damages and

_____

[1]Neurocare originally filed the Complaint as a putative class action and made several factual allegations regarding the class. Doc. 1. However, District Judge Presnell denied without prejudice Neurocare's Motion to Certify Class on December 18, 2013 (Doc. 16) and it has not been renewed.

permanent injunction, and **DENIED without prejudice** as to costs, which must be presented to the Clerk in a bill of costs.

### I. Procedural History

On August 12, 2013, Neurocare filed suit against Defendants for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and common law conversion.   Defendants were served on September 18, 2013, but have not appeared to defend the claims against them. On January 23, 2014, default was entered against both Defendants.   Docs. 23-24. On March 13, 2014, Neurocare moved to have a final default judgment entered against Defendants in the amount of $2,005.64 for statutory damages under the TCPA and for Neurocare's costs. Doc. 25. Neurocare also seeks a permanent injunction enjoining Defendants from further transmission of unsolicited facsimile advertisements.   Doc. 25.

### II. Applicable Law of Service of Process and Defaults

Before the court may enter a final default judgment, the clerk must enter a default when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a); *see also Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.*, 803 F.2d 1130, 1134 (11th Cir. 1986) ("Rule 55 applies to parties against whom affirmative relief is sought who fail to 'plead or otherwise defend'" (citation omitted)). Notwithstanding the entry of default by the clerk, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Constr. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).   Therefore, the court must evaluate whether it is proper to enter a default judgment. For example, if a defendant never appears or answers a complaint, then the "case never has been placed at issue[,]" and thus, the court may enter a default judgment. *Solaroll Shade*, 803 F.2d at 1134. However, prior to entering a default judgment, the court must verify that the complaint is well pleaded because "[a] 'defendant, by his default, admits the plaintiff's well-

pleaded allegations of fact, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citations omitted); *Nishimatsu Constr. Ltd.*, 515 F.2d at 1206 ("There must be a sufficient basis in the pleadings for the judgment entered.").

To determine if a plaintiff's complaint is well-pleaded, the court considers Rule 8(a)(2) of the Federal Rules of Civil Procedure and the standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (explicating *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). According to Federal Rule of Civil Procedure 8(a)(2), to state a claim for relief, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 678 (citing *Twombly*, 550 U.S. at 570). In other words, the allegations in the complaint need to be sufficient "to 'raise a right to relief above the speculative level' on the assumption that all the allegations in the complaint are true." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing *Twombly*, 550 U.S. at 570). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. 6 (citation omitted).

The Court must also confirm that the defaulting defendant was properly served under the Federal Rules of Civil Procedure. It is axiomatic that absent good service, the Court has no in personam or personal jurisdiction over a defendant. *Eastman Kodak Co. v. Studiengesellschaft Kohle mbH*, 392 F.Supp. 1152 (D. Del. 1975). Federal courts have jurisdiction over private suits arising under the TCPA. *See Mims v. Arrow Financial Svcs., LLC*, ___ U.S. ___, 132 S.Ct. 740 (2012). A federal trial court has an affirmative duty to examine its jurisdiction over the parties when entry of judgment is sought against a party who has failed to plead or otherwise defend. *Williams v. Life Savings and Loan*, 802 F.2d 1200 (10th Cir. 1986). Without personal service of process in

accordance with applicable law, a federal court is without jurisdiction to render a personal judgment against a defendant. *Royal Lace Paper Works, Inc. v. Pest-Guard Products, Inc.*, 240 F.2d 814 (5th Cir. 1957)[1].

As Neurocare alleged in the Complaint, Defendant US Capital Access, Inc., is a corporation with its principal place of business in Sherman Oaks, California.   Doc. 1 ¶ 7. Defendant Abe Nazari is an owner, officer, director, or shareholder of Defendant US Capital Access, Inc. Doc. 1 ¶ 8. Determining whether personal jurisdiction exists over an out-of-state defendant such as US Capital Access or Abe Nazari involves two inquiries: (1) whether a forum state's long arm statute permits service of process and (2) whether the assertion of personal jurisdiction violates due process[2].   The due process requirement is met when a defendant has established "minimum contacts" with the state seeking to exercise jurisdiction. *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir.1988) (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "A court may exercise specific jurisdiction over a nonresident defendant only when the plaintiff's cause of action arises from or is directly related to a defendant's contacts with the forum state." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 n. 3 (11th Cir. 2000).

---

[1]All decisions of the United States Fifth Circuit Court of Appeals before October 1, 1980 which have not been overruled by the United States Eleventh Circuit Court of Appeals are binding on federal courts situated in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[2]Florida's long-arm statute states, in relevant part:
   (1) (a) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
   1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state. . . .
   (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
Fla. Stat. § 48.193(1)(a) (1) and (2).

US Capital Access, Inc. had sufficient minimum contacts with the state of Florida because it contacted Plaintiff through facsimiles, and thus, committed a statutory tort within this district, in Seminole County, Florida.  Doc. 1 ¶ 9. *See, e.g., Affordable Healthcare, LLC. V. Protus IP Solutions, Inc.*, 2009 WL 749536, *3 (E.D. Mo. Mar. 19, 2009) (noting that parties did not dispute that the court had jurisdiction over TCPA claims of plaintiffs from within the forum state who had received unsolicited faxes); *Creative Montessori Learning Center v. Ashford Gear, LLC*, 2010 WL 3526691 (N.D. Ill. Sept. 2010) (holding that corporation who sent unsolicited facsimile advertisements in violation of the TCPA committed a tort and was amenable to suit in the forum state).   Thus, the Court has personal jurisdiction over both Defendants consistent with the requirements of due process.

Under Federal Rule of Civil Procedure 4(h), service of a federal Complaint on US Capital Access, Inc., as a California corporation, may be served in the same manner as service on an individual (as in Rule 4(e)) or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires– by also mailing a copy of each to the defendant."  Fed.R.Civ.P. 4(h). Under Rule 4(e), service is accomplished by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made or by delivering a copy to an agent authorized by appointment or by law to receive service of process.  Fed. R. Civ. Pro. 4(e).

Here, both Defendants were properly served through service on Abe Nazari, personally (Doc. 11) and as an owner, officer, director, or shareholder for US Capital Access, Inc.  Docs. 12, 25.  Defendant Nazari is listed with the California Secretary of State's office as the agent for service

of process[2] at the address in Sherman Oaks, California where service of process was made. According to Neurocare's counsel, although Defendants have never appeared or otherwise participated in this litigation, Defendant Nazari was previously in contact with Plaintiff's counsel during September and October 2013 and Nazari revealed that he had hired a Canadian fax broadcaster to conduct fax advertising, but stated that he would not identify the broadcaster without a Court order compelling him to do so.  Doc. 25 at 2. Defendant Nazari also indicated in his conversations with Plaintiff's counsel that he had no intention of hiring counsel or appearing in this case.  Doc. 25 at 2.

### III. *Factual Background*

Plaintiff Neurocare is a Florida professional association with its principal place of business in Winter Park, Seminole County, Florida.  Doc. 1 ¶ 6.  On August 13, 2012, Neurocare received an unsolicited fax advertisement advertising the goods, products or services of defendants US Capital Access and Abe Nazari (the "Junk Fax"). Doc. 1 ¶¶ 12-13 & Ex. A; Doc. 25-2 (Pineless Decl.).  Defendants sent, or caused, this unsolicited fax advertisement to be sent to Neurocare. Defendant Abe Nazari, who appears to have authored the subject fax advertisement (the "Junk Fax"), actively participated in Defendants' scheme to send the subject unsolicited fax advertisement to persons without first obtaining their express permission in that he actively participated in drafting the subject fax, actively participated in determining where the subject fax would go, and/or actively participated in transmitting the subject fax. Doc. 1 ¶ 14.

Neurocare did not invite or give permission to anyone to send the Junk Fax to it; Neurocare did not have any established business relationship with US Capital Access Inc.  Doc. 1 ¶ 15; Doc. 25-2.  The subject fax does not contain a clear and conspicuous opt-out notice.  Doc. 1 ¶ 16.

---

[2]See kepler.sos.ca.gov, business search, for US Capital Access, Inc. (visited on May 12, 2014).

Defendants' opt-out notice was in a small font located near the bottom of the page. Exhibit A. Additionally, the opt-out notice did not include information that failure by Defendants to comply with an opt-out request within 30 days is unlawful as required by the TCPA. Doc. 25-2. Moreover, the opt-out notice did not contain a domestic toll free fax number as required by the TCPA. Doc. 25-2.

On the face of the Junk Fax, it is not clear whether the telephone number identified in the notice was available to Neurocare to make an opt-out request 24 hours a day, 7 days a week.   Doc. 1 ¶ 17.   There is no reasonable means for Neurocare to avoid receiving illegal faxes because fax machines are left on and ready to receive the urgent communications the fax owner desires to receive.   Doc. 1 ¶ 19.

### IV. Liability

Neurocare seeks damages for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227. The federal Telephone Consumer Protection Act (the "TCPA"), prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission ("junk faxes" or "unsolicited faxes").   47 USC § 227(b). The TCPA mandates that when a person or entity sends an advertisement by fax it must always include a very specific opt-out notice that is clearly and conspicuously included on the first page of the advertisement. See 47 U.S.C. § 227 (b) (2) (D); and 47 C.F.R. § 64.1200 (a) (4) (iii). The TCPA provides a private right of action and provides statutory damages of $500 - $1,500 per violation.

Defendant US Capital Access, Inc. sent the Junk Fax to Neurocare without its prior express invitation or permission and without any established business relationship with Neurocare. Doc. 25-2 ¶¶ 4-5, Ex. 1.   Accordingly, US Capital Access, Inc. is liable under the TCPA.

Court have held that an individual corporate officer, if acting on behalf of the corporation, may be held personally liable for purposes of the TCPA if he or she had "direct, personal

participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved." *See, e.g.*, *Creative Montessori Learning Center v. Ashford Gear, LLC*, 2010 WL 3526691 (N.D. Ill. Sept. 2010) (holding manager who admittedly created the unsolicited facsimile advertisements and was in possession of the names and fax numbers of fax recipients could be held individually liable under the TCPA); *J2 Global Comm., Inc. v. Blue Jay Inc.*, 2009 WL 4572726 *6 (N.D. Cal. Dec. 1, 2009) (holding default was warranted against manager of companies who participated or oversaw sending of faxes); *Texas v. Am. BlastFax, Inc.,* 164 F.Supp.2d 892, 896-99 (W.D. Tex. 2000) (individual corporate officer, if acting on behalf of the corporation, may be held personally liable for purposes of the TCPA if he or she had "direct, personal participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved"). In this case, Defendants Nazari's name is specifically listed as the sender of the Junk Fax, he admitted to Plaintiff's counsel that he authorized the sending of the fax; thus, Defendant Nazari is liable under the TCPA.

## V. Damages

Neurocare seeks to recover a total of $2,005.64 in damages for Defendants' violation of the TCPA and to recover costs.  The TCPA creates a private right of action and provides statutory damages of $500 per violation. 47 U.S.C. § 227 (b) (3) (B).  However, the amount may be tripled within the Court's discretion if the defendant "willfully or knowingly" violates the statute.  47 U.S.C. § 227(b)(3) ("[T]he court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.").

Neurocare argues it is entitled to triple the statutory penalty of $500 in order to recover $1,500 for the Junk Fax that Defendants sent to it. There is a split of authority as to what constitutes a willful or knowing violation. *See, e.g., Stewart v. Regent Asset Management Solutions*, 2011 WL

1766018, *7 (N.D. Ga. May 4, 2011) (discussing the split and citing cases).   Although some courts have held that a defendant must have known that its actions in sending unsolicited communications were a violation of the TCPA, other courts have held that a plaintiff need not prove that the defendant had knowledge of the TCPA's provisions in order to establish that the defendant willfully or knowingly violated the TCPA, but only that the defendant knew that it acted or failed to act in a manner that violated the statute.   *See id.* (and cases cited therein); *Charvat v. Ryan*, 116 Ohio St.3d 394, 879 N.E.2d 765, 770–71 (Ohio 2007).   In Defendant Nazari's representations to Plaintiff's counsel, he acknowledged that he had hired a "fax broadcaster" and, thus, he intended for the Junk Fax to be "broadcast" to an entity such as Plaintiff with whom Defendants had no prior relationship or permission to send a fax.   Neurocare is entitled to $1,500 in damages.

## VI. Costs

Neurocare also requests that the Court award it $505.64 in costs. Pursuant to Federal Rule of Civil Procedure 54(d)(1), costs are to be taxed by the Clerk upon presentation of a bill of costs and limited to those categories listed in 28 U.S.C. § 1920; costs thus taxed may be reviewed by motion by any party. It is respectfully **RECOMMENDED** that to the extent the Motion seeks costs, it be **DENIED** without prejudice to Neurocare's filing a bill of costs. The form is available on the Court's website.

## CONCLUSION

It is respectfully **RECOMMENDED** that Neurocare's Motion for Default Judgment be **GRANTED** against Defendants, US Capital Access, Inc. and Abe Nazari, jointly and severally, in Neurocare's favor, in the amount of $1,500.00 for statutory damages under the TCPA and Neurocare's costs. It is respectfully **RECOMMENDED** that Neurocare's Motion seeking costs be **DENIED** without prejudice to Neurocare's filing a bill of costs within 7 days of any Order adopting this Report and Recommendation. The form is available on the Court's website.

It is further respectfully **RECOMMENDED** that Defendants be enjoined from sending advertisements by facsimile to Neurocare without prior express invitation or permission. Neurocare is **ORDERED** to file a proposed injunction within 7 days of this Report & Recommendation.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 13, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy